**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID R.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 21 C 3483** |
| | ) | |
| **v.** | ) | **Judge Jorge L. Alonso** |
| | ) | |
| **KILOLO KIJAKAZI, Acting Commissioner of Social Security,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

# Memorandum Opinion and Order

Plaintiff, David R.,[1] seeks judicial review of the Commissioner of Social Security's[2] denial of his applications for Disability Insurance Benefits and Supplemental Security Income Benefits. *See* 42 U.S.C. § 423. For the reasons set forth below, the Court grants Defendant's motion for summary judgment [14].

## Background

The Court takes the following facts from the Certified Copy of Administrative Record ("AR") (ECF No. 10). On September 19, 2018, Plaintiff filed applications for Social Security Disability Insurance and Supplemental Security Income Benefits, alleging disability starting on August 31, 2018. Plaintiff obtained a hearing before an administrative law judge ("ALJ") on November 5, 2020. The ALJ issued an unfavorable decision with respect to Plaintiff's claims on December 14, 2020. The Appeals Council denied review on April 26, 2021.

[1] Pursuant to this district's Internal Operating Procedure 22, the Court refers to plaintiff by his first name and the first initial of his last name or simply "Plaintiff."
[2] In accordance with Federal Rule of Civil Procedure 25(d), the Court substitutes Kilolo Kijakazi as defendant in this matter.

## I. Testimony and Medical History

At the hearing, Plaintiff testified that he suffers from numerous health issues, including functional movement disorder and bipolar disorder. Plaintiff testified that he lives in his parents' basement due to his risk of falling. (AR 54-55.) He goes up to the second floor at least once a day to shower. (AR 71.) He also testified that he last worked at a restaurant in 2018 but stopped working because the severity of his symptoms made him unable to work. (AR 61-62.) Plaintiff testified that he can sit for about 30 minutes before having to stand up, walk for about five minutes before he becomes a fall risk, and lay down for about 45 minutes before needing to get up. (AR 65, 71-73.) He has fallen in the past, but his condition has improved since 2013. (AR. 74-75.) In addition, Plaintiff testified that he was diagnosed with bipolar disorder, which causes him to experience manic episodes two times a week. (AR 54-65.) He takes medication for his bipolar condition, but it doesn't always help or prevent the manic episodes. (AR 64-65.) Due to his functional movement disorder, he loses mobility in his legs at least one day a week. (AR 77.) Plaintiff spends his typical day showering, eating, reading, listening to music, and talking to friends on the phone and computer. (AR 78-79.) He entered a weight loss competition with his friend sometime after 2013. (AR 69.)

Dr. Kasi, Plaintiff's doctor from Rush University Department of Physcial Medicine and Rehabilitiaton, testified that he diagnosed Plaintiff with a functional movement disorder, a rare condition whereby someone develops abnormal movments (similar to Parkinson's disease) that do not fit the pattern of another movement disorder. (AR 35.) In other words, a person with a functional movment disorder develops consistent abnormal symptoms that cannot be explained in terms of conventional diagnostic criteria. (AR 36.) Dr. Kasi started treating Plaintiff in December of 2015. At that time, Plaintiff's main symptoms were abnormal movment of the legs

and arms, which resulted in twitching and an inability to walk. (AR 38.) Kasi further explained that Plaintiff's symptoms "wax and wane" and that some days he will be able to walk without problems whereas, on other days, his symptoms inhibit his ability to walk. (AR 41; 46.) Kasi testified that most of his opinions were based on Plaintiff's subjective reporting, and that Plaintiff's condition, as it related to appointments with him, improved over time. (AR 41; 46.) Dr. Kasi stated that, currently, there is no definitive treatment plan for individuals with functional movement disorder. (AR 39.)

In addition to testimony, the ALJ also considered Plaintiff's medical records, which spanned from 2012-2020. These records included treatment for Plaintiff's functional movement disorder, mental health disorders, and various physical conditions. The ALJ also considered disability reports, function reports, third-party function reports, work activity reports, as well as reports from state agency consultants regarding Plaintiff's medical status.

## II. Administrative Hearing

After the hearing, the ALJ proceeded to review the testimony and medical records to determine whether Plaintiff is disabled. To determine whether a claimant is disabled, the Social Security Administration ("SSA") follows a five-step review process, sequentially assessing "(1) the claimant's current work activity; (2) [if none,] the medical severity and duration of the claimant's impairments; (3) whether the claimant's impairments meet or medically equal the requirements of an impairment listed in the regulations; (4) [if not,] whether the claimant has the residual functional capacity to return to past relevant work; and (5) if the claimant cannot return to past relevant work, whether he or she can 'make an adjustment to other work' in the national economy." *Varga v. Colvin*, 794 F.3d 809, 812 n.2 (7th Cir. 2015) (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)).

Applying these steps, the ALJ found that Plaintiff had the following severe impairments: functional movement disorder/conversion disorder, bipolar disorder, depressive disorder, anxiety disorder, marijuana use disorder, L5-S1 disc protrusion, and mild thoracic and lumbar spondylosis. (AR 16.) The ALJ also noted that Plaintiff suffered from the following non-severe impairments: a small hiatal hernia, esophagitis, and hepatic steatosis. But the ALJ found that these impairments, or combination of impairments, did not meet or medically equate to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 16.)

In support of these findings, the ALJ noted that Plaintiff reported caring for hygiene and self-care, preparing simple meals, reading, writing, watching movies, listening to music, playing video games, caring for pets, needing no reminders to care for needs or take medications, performing household chores twice per week, and going grocery shopping. (Exhibits 5E & 9E). Plaintiff also reported no difficulty managing money, getting along with others, or following instructions, being able to lift 50 to 60 pounds, and some difficulty with attention. The ALJ noted that Plaintiff's records indicated that he was seeing a psychiatrist and that he had periods of noncompliance during which he experienced episodes of decompensation. More recently, the records noted that Plaintiff's medications controlled his symptoms, and his mental status examinations regularly demonstrated good hygiene, normal speech, normal concentration, calm mood, congruent affect, good judgment and logic, intact memory, and good insight. (Exhibit 20F, 32F).

The ALJ also considered reports showing that Plaintiff worked out with a friend several times per week, enrolled in a weight loss contest, struggled without a regular schedule, planned to join a service project, improved with therapy, went to family parties, played online games and

chatted with friends online, planned to go back to school to become a teacher, and that his sister was expecting a child that he expected to be alone with for three hours per day.

The ALJ further reviewed opinions from Plaintiff's treating physicians. The ALJ found Dr. Kasi's opinion partially persuasive because some of the opinion was consistent with other evidence, such as limitations with bending, climbing, balancing, stooping, and crouching. But he found other portions of the opinions unpersuasive. For instance, he noted that Dr. Kasi's testimony did not address Plaintiff's need to need to lie down during the day, take additional breaks throughout the day, or any significant restrictions with reaching, handling, fingering, or lifting—which Dr. Kasi opined to in his written medical source statement. The ALJ found these restrictions inconsistent with other evidence in the record, medical and nonmedical, showing less significant limitations. The ALJ noted, for example, that many of the Plaintiff's statements regarding his function and activities contradicted Dr. Kasi's findings of significant impairments in these areas.

With respect to one of Plaintiff's other treating physicians, APN Jovel Broquez, the ALJ found this opinion unpersausive. The ALJ concluded that the opinion was unpersuasive because it stated that Plaintiff had a GAF (global assessment of functioning) score of 55, which generally corresponds to moderate symptoms or moderate difficulty in social, occupation, or school functioning. But the ALJ determined that APN Broquez opined to significant limitations that did not correspond to a moderate GAF score. Thus, he found the opinion inconsistent. The ALJ further found the portions of the opinion regarding Plaintiff being unable to obtain or maintain employment neither valuable nor persuasive.

The ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), with the following limitations: he can

occasionally push/pull with bilateral lower extremities; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can never climb ladders, ropes or scaffolds; should engage in no operation of foot controls or commercial driving; can engage in no overhead reaching bilaterally; should avoid all exposure to workplace hazards; can adapt to routine changes in the workplace that are infrequent and easily explained; can interact occasionally with supervisors and coworkers, and the general public; and requires a cane for ambulation. (AR 18.) Lastly, the ALJ found that jobs in the national economy existed that Plaintiff could perform. (AR 23.) Based on those findings, the ALJ denied Plaintiff's applications for benefits. (AR 24.)

## Discussion

When the Social Security Appeals Council denies an unsuccessful applicant's request for review, the ALJ's decision becomes the SSA's and Commissioner's final decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The claimant may seek review of a final decision in a federal district court, which may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The reviewing court's role is limited: it may reverse the Commissioner's final decision only if it is not supported by substantial evidence or is based on a legal error. *Hopgood v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009); s*ee also Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003) (noting that "[t]his is a deferential but not entirely uncritical standard, for the Commissioner's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues" (internal citations omitted)).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted). The reviewing court cannot reweigh evidence or substitute its

judgment for the ALJ's; it is limited to reviewing the ALJ's decision to determine if it creates a logical bridge from the evidence to the conclusions. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

Social Security Regulation 96-8p requires that the ALJ evaluate a claimant's residual functional capacity ("RFC")—which assesses an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis (*i.e.*, 8 hours a day for 5 days a week or an equivalent schedule). This assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical and nonmedical evidence. An ALJ need not discuss every piece of evidence, but he must build an accurate and logical bridge from the evidence to his RFC assessment. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). This means that the ALJ must "explain how [he] reached [his] conclusions" about an applicant's abilities by pointing to evidence that "support[s] the propositions for which it is cited." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)). "It is not a court's role to displace an ALJ's judgment by making [its] own findings about the facts, but [a court] cannot uphold an administrative determination that failed to explain the outcome adequately." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

Plaintiff argues that the ALJ erred by (1) analyzing Plaintiff's mental functioning for purposes of his RFC assessment, and (2) improperly rejecting the opinions of two treating specialists. The Court addresses each argument in turn.

## I. Mental Health Functioning

In determining whether a mental impairment meets a listing, a claimant must show either extreme limitations in one, or marked limitations in two, of the following so-called "Paragraph

B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpart P, A2, § 12.00. The ALJ found that Plaintiff had mild limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace; and moderate limitations interacting with others and adapting or managing oneself. (AR 17.) Accordingly, the ALJ found that Plaintiff's mental impairment did not satisfy the paragraph B criteria.

Plaintiff argues that the ALJ did not conduct a proper analysis of his mental function because, among other things, the ALJ did not present distinct assessments of the four functional criteria. But as the Defendant correctly points out, the ALJ's decision must be read as a whole to determine whether substantial evidence supports the ALJ's finding. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). Indeed, even in cases where the ALJ does not explicitly assess a claimant's mental functioning capability under the four paragraph B criteria, but the decision shows that the ALJ considered all the relevant information and required factors, reversal is not warranted. *See Pepper v. Colvin*, 712 F.3d 351, 366 (7th Cir. 2013). In this case, the ALJ outlined Plaintiff's functional ability with respect to the four paragraph B criteria and then discussed what evidence supported those ratings. The Court does not find that approach, in and of itself, improper.

Plaintiff next argues that the ALJ did not conduct an in-depth analysis of his mental functioning and that it is impossible to discern how the ALJ arrived at his RFC findings. But the ALJ's decision details what evidence he considered in assessing Plaintiff's mental impairments and crafting his RFC findings. The Court does not agree with Plaintiff's characterization of the ALJ's decision as "tossing in" facts. Indeed, the decision makes clear that the ALJ considered

functional reports, Plaintiff's medical records and activities of daily living, psychological consultative examinations, state agency consultations, as well as statements and testimony from Plaintiff's treating physicians. The ALJ then used this information to evaluate Plaintiff's physical and mental abilities.

The ALJ did not need to address every piece of evidence, and, in fact, Plaintiff cites a host of facts nearly all of which the ALJ specifically addressed. For example, the ALJ addressed Plaintiff's treatment under Dr. Kasi (AR 21), psychological consultation in March 2019 (AR 20), need to ambulate with a cane (AR 20), episodes of mania and depression (AR 17), and blackouts (AR 16). The ALJ also considered Plaintiff's activities of daily living, recounting that Plaintiff worked out with a friend multiple times per week, joined a physical fitness (*i.e.*, weight loss) competition, went to family parties, played online games, chatted with friends, planned to go back to school, and expected to help his sister with her newborn child after she gave birth. (AR 17). The ALJ was entitled to consider this nonmedical evidence when evaluating the intensity and persistence of Plaintiff's symptoms. *See* 20 C.F.R. § 404.1529(c). Rather than demonstrating any fundamental deficiencies with the ALJ's analysis in these areas, Plaintiff recites facts showing Plaintiff's impairments and, effectively, invites the Court to reweigh this evidence to conclude that these impairments rise to the level of a disability. But the Court will not, and indeed cannot, reweigh evidence. *Gedatus*, 994 F.3d at 900.

The Court also notes that the parties disagree about whether Plaintiff quit his prior job because of his symptoms or for another reason. The ALJ found Plaintiff's testimony that he quit his job because of his conditions incredible and, instead, credited notes in Plaintiff's medical records indicating that he quit because of how he was treated. The Court finds this to be a

quintessential credibility determination reserved to the ALJ, and it is not improper because there is evidence in the record to support the ALJ's conclusion. (*See* AR 1987-1993; 2002.)

In sum, the Court finds that the ALJ generally discussed Plaintiff's daily activities, mental state around people, difficulties with focus or concentration, and any issues with episodes of decompensation. In doing so, the Court finds that the ALJ considered all the relevant factors and that the mental health findings are supported by substantial evidence.

### II. Treating Specialists' Opinions

Plaintiff next argues that the ALJ's rejection of his treating specialists' opinions was not supported by substantial evidence. More specifically, Plaintiff argues that the ALJ erred rejecting the opinions of Dr. Kasi and APN Jovel Broquez (who treated Plaintiff beginning in April 2019 and completed a Mental Residual Functional Capacity Statement on Plaintiff's behalf).

Dr. Kasi testified that Plaintiff was diagnosed with a functional movement disorder and that he treated Plaintiff starting in December of 2015. Dr. Kasi completed a medical source statement days before the hearing in which he opined that Plaintiff's pain would frequently interfere with his attention and concentration, that he could walk or climb steps for five minutes at one time, that he had difficulty with balancing/stooping/crouching/bending, and that he needed to lie down or recline for about an hour in an eight-hour day. (AR 21; 2194-2197).

The ALJ found Dr. Kasi's testimony persuasive to the extent he testified that Plaintiff's symptoms improved with time, waxed and waned, and that they largely affected his ability to move about. The ALJ further found Kasi's medical source statement partially persuasive because the record supported limitations bending, climbing, balancing, stooping, crouching, and the need to use a cane. The ALJ found the remaining portions unpersuasive because Dr. Kasi's testimony did not reflect the kind of significant limitations as those opined to in the written statement. The

ALJ also noted that some of Dr. Kasi's opinions contradicted Plaintiff's testimony regarding his own ability to perform activities of daily living. The ALJ recognized other limitations that Dr. Kasi opined to, such as with standing and walking, and accommodated those limitations in his RFC findings.

The Court finds that the ALJ appropriately evaluated Dr. Kasi's opinions. The ALJ's discussion makes clear that he considered the full scope of Dr. Kasi's opinions and, in areas where he found those opinions unpersuasive, articulated specific reasons for why he discounted those opinions. The ALJ stated, for instance, that Dr. Kasi's testimony didn't suggest any limitations with reaching, handling, fingering, or lifting, and didn't suggest that Plaintiff needed additional breaks throughout the day—which the written statement identified as issues. Instead, Dr. Kasi focused on Plaintiff's ability to stand and walk, despite direct questions asking about Plaintiff's ability to perform those other acts. (AR 22.) Thus, the ALJ found that the testimony about Plaintiff's limitations was not entirely consistent with the medical source statement.

The ALJ also considered Plaintiff's activities of daily living and found that those activities were not entirely consistent with Dr. Kasi's opinion. Plaintiff argues that the ALJ improperly suggested that Plaintiff's daily functioning equated to an ability to perform work-related activities on a full-time basis. But the Court does not interpret the ALJ's decision to make this suggestion. Rather, the Court interprets this language as commenting on Plaintiff's ability to perform certain daily activities and how those activities, in conjunction with the applicable medical evidence, supported the ALJ's conclusions.

Plaintiff takes further issue with the ALJ's assessment that his symptoms waxed and waned. Plaintiff argues that the fact that his symptoms waxed and waned is irrelevant to his disability determination. But the fact that symptoms may be sporadic is certainly relevant to the

duration and frequncy of a claimant's symptoms. *See* SSR 16-3p; 20 C.F.R. 404.1529(c)(3); 20 C.F.R. § 404.929(c)(3). Again, the Court's role is not to reevaluate facts, reweigh evidence, or decide questions of credibility, *see Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007), nor substitute its own judgment for that of the Commissioner. *Id.*; *see also Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). The Court's role is limited to determining if substantial evidence supports the ALJ's findings and if the ALJ minimally articulated his reasoning for crediting or rejecting evidence of disability. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). And here, the Court finds that the ALJ articulated his reasons for discounting Dr. Kasi's opinions and citing specific evidence in the record.

Next, Plaintiff argues that the ALJ improperly rejected the opinion of APN Jovel Broquez. But, like with Dr. Kasi, the Court finds that the ALJ articulated his reasons for rejecting this opinion. The ALJ noted that Broquez opined that Plaintiff had a GAF score of 55, would be off task for 30% of the workday, absent 5 days per month, and would only be able to perform up to 60 percent of the workday. The ALJ found this opinion inconsistent because a GAF score of 55 generally corresponds to moderate symptoms, which the ALJ considered inconsistent with the severity of the therapist's noted limitations. Plaintiff, on the other hand, argues that this analysis is unsupported by the record and that the ALJ mistakenly relied on a nonbinding case from another circuit.

The Court does not find the ALJ's analysis improper considering the full scope of the decision. The ALJ considered more than just Plaintiff's GAF score during his assessment of Plaintiff's impairments. He considered other reports and records indicating, among other things, that Plaintiff had no difficulty managing money, getting along with others, or following instructions. He also considered reports from state agency consultants who opined that Plaintiff

had mild to moderate limitations. (AR 17; 101-108; 117-128; 143-154; 166-177.) Moreover, the ALJ explained his reasoning for rejecting Broquez's opinion: he found that the opinion regarding the severity level of Plaintiff's symptoms contradicted his assessed level of Plaintiff's impairments. This type of justification is sufficient to uphold the ALJ's decision. *See, e.g.*, *Cindy P. v. Kijakazi*, Case No. 20-cv-6708, 2022 WL 2802328, at *6 (N.D. Ill. July 18, 2018) ("This quoted passage reveals that the ALJ offered the requisite sound explanation for discounting Dr. Grandinetti's opinions, per her explicit reasoning that there was a lack of supporting medical evidence, contrary medical evidence, and an inconsistency with the medical expert's testimony.") Accordingly, the Court finds that the ALJ appropriately considered the treating opinions in this case.

## Conclusion

For the reasons set forth above, the Court grants the Commission's motion for summary judgment [14]. The Commission's decision is affirmed. Civil case terminated.

**SO ORDERED.**

**ENTERED: September 26, 2022**

**HON. JORGE ALONSO**
**United States District Judge**